Case 18-1426, Earl Crosby v. Twitter Inc at all. Argument not to exceed 15 minutes per side. Mr. Weininger, you may proceed for the appellant when ready. Judge Gibbons, may it please the Court, Dan Weininger on behalf of the appellants in this case. At the outset, I want to make something very clear because I believe in the briefings. Are you reserving some time? I'm sorry, yes, I'm reserving four minutes. I apologize. At the outset of the argument, I want to make something clear because I believe in our briefing in responding to the defendants in challenging the district court's opinion. There's really two acts of international terrorism that are going on here, and I want to make that clear for the Court. Say that again. There are two acts of international terrorism that are the focus of this appeal. On the direct liability case, which is Section 2339B incorporated into 2333A, the international act of terrorism is the defendants' material support that was provided to ISIS. I want to make that clear. On the secondary liability claim, the international act of terrorism is the ISIS attack itself. And that's an important distinction because it affects the causation argument because defendants have made the argument that there's two separate causation standards, one for direct liability and one for secondary liability. That's not true. There's one standard for causation. What is the difference and what is important is where you measure causation from. In the direct liability context, you measure it from the act of terrorism, which again in that case was the provision of material support. Are you saying that violating 2339B alone is an act of international terrorism? No. I'm not saying that at all. No. How does that provision work then with 2333A? Sure. So you have 2339B acts as the substantive predicate, so to speak. And that violation still has to satisfy the definition of an international act of terrorism under 2331.1 and the criteria that are set forth there. One of the main elements, and I believe this is what you're driving at, Judge Nalbandian, is it an act that's dangerous to human life. And I believe Judge Posner addressed that very question in Boeing. And he said when you provide material support to an organization, in that case it was Hamas, and if you provide in this case material support to ISIS, that puts videos on defendants' platforms of people having their heads cut off, Americans having their heads cut off, then yes, you've provided material support in a way that is dangerous to human life. This is the handing the gun to the child analogy? I'm not sure if I necessarily agree with that analogy, so to speak, but it's on par with that, yes. And the Supreme Court has said this, too, in the Humanitarian Law Project, albeit not in the speaking, focusing more on the criminal context of 2339B. So you believe that the statute provides that Twitter and Google must perform a censorship role, sort of? I don't think they need to provide a censorship role. I think they cannot provide material support to ISIS, period. It doesn't make a difference to me whether ISIS was having baking recipes that they're placing on the platforms. ISIS cannot be allowed to communicate on these platforms. They are a designated foreign terrorist organization. There's many terrorist organizations in the world. Not all of them are designated by the Secretary of State. ISIS has been since February 2004. If the New York Times runs the same basic information about ISIS, what do you do with that? If the news media runs the same information that you find on Twitter or something, what do you do about their liability? If the New York Times, I think the two situations are different. If the New York Times was doing exactly what the defendants are doing here, which is essentially allowing ISIS to fundraise on their sites, which the New York Times cannot possibly do. If the New York Times was allowing ISIS to recruit in their newspaper somehow, that would be a problem. If the New York Times was allowing ISIS to put recruitment ads in their newspaper, we would have a serious, serious problem with the New York Times. But again, those are not function- The New York Times runs an article in which they explain how ISIS is recruiting their members in detail. That would provide the information that ISIS would want to get out. They'd be happy to get that information out to the public, and don't you have a free speech problem? I don't think so, because the New York Times, in your hypothetical, the New York Times is just describing how ISIS goes about performing there. Detail. But the New York Times, for example, and we've seen this in actuality, but the New York Times is not going to put the actual video of Mr. Foley being decapitated by an ISIS member. They're not going to do that. The New York Times is well within its rights to publish an article about how ISIS is recruiting. In fact, the New York Times has done that, and many scholars have done that too, and said, listen, this is what ISIS is doing on defendants' platforms. Mind you, that establishes the knowledge requirement. As I understand it, for the defendants in this case, there's really no filtering mechanism. I mean, they're accepting ISIS content without exercising the sort of judgment that is required in order to write a news story, for example. I think the news story context, though, is an analogy that really fails, because what's particularly persuasive either. Right. I know that's the argument. I think it's important to look at what the differences are. The difference really is very simple. ISIS is using their platforms for command and control. ISIS is using their platforms in a lot of instances to communicate. ISIS is using their platforms for propaganda. And also for fundraising. None of these things are happening in the journalistic context. Why? I mean, how do you just assert that when the same basic information may be obtained in a newspaper or on television or something? Because the difference, Judge Merritt. You're just making an assertion, and I don't see how that assertion is correct. Judge Merritt, to address your concern, let's take the most extreme example just to highlight  And I would submit to the court. If the New York Times was allowing ISIS to somehow fundraise in their newspaper or promote and proliferate propaganda, we would have a problem. We would absolutely have a problem, because that would violate the ATA, and that would violate JASTA. And now JASTA says, an explicit statement from Congress, that people that may use the with the Constitution of the United States. Not consistent with the Constitution and laws of the United States, which is the particular formula that we're used to in federal statutory, civil statutory law. The Constitution alone. I'm sorry, Judge Gibbons. Well, I didn't mean to interrupt you. But I think if we accept your premise that it's the providing of material support, there's still really a more fundamental problem with your client's case. And that has to do with the causation question, whether that material support approximately caused the injuries to your clients and their loved ones. Let's break it down this way, and it dovetails with how I opened. Two acts of terrorism are going on here. The direct liability claim focuses on the material support. The secondary liability claim focuses on the act of terrorism, which in that instance, when you use that statute, the international act of terrorism is the ISIS attack in Florida. And this is where the causation is important. Because on a direct liability claim, we haven't sued ISIS. We haven't sued. True. But in the secondary liability aspect on aiding and abetting, you must assess causation from the act of terrorism. And you must do that actually in both contexts. You assess causation from whatever the act of terrorism was. How do you get to the point that why do you think that the aiding and abetting standard is appropriate in this case? You bought a private civil right of action against those who, in your language, provide a platform. So how does aiding and abetting get into it, which is a criminal case concept? Well, now under JASTA, the Justice Against Sponsors of Terrorism Act, Congress has explicitly allowed aiding and abetting liability under the ATA. That's clear. No one disputes that, and the other side is not going to dispute that. JASTA was passed in September of 2016. JASTA applies to this case. JASTA says there's aiding and abetting for ATA civil liability. That being said, if you talk about causation, the causation will run from the act of international terrorism, which in that case, the act of international terrorism is the ISIS attack. And the Second Circuit in Lind even said that at the end of their opinion in Lind, where the Arab Bank had challenged the jury instruction on causation. The Second Circuit clearly said, but for causation, proximal causation, not an issue. Why? Because the plaintiffs in that case had established that Hamas carried out the attacks. That's all they needed to do under the secondary liability. Why? Because the causation ran from the international act of terrorism. And in the 2333... So you're saying there has to be no link between what the substantial assistance was and the ultimate act? The statute says that there must be substantial assistance to the person who committed the act. So if you can establish, and that's the plain text of 2333D, if you establish that you provided substantial assistance knowingly to ISIS, and according... So if I provide meals to ISIS fighters in Lebanon or something, and then this attack happens in Florida, I'm liable, I aided and abetted the Florida attack? There has to be, you don't have to prove any link between this alleged substantial assistance and the act? If you look at Boeing, again that's a direct liability context, and if you look at Lind, Lind says you don't need knowledge of the actual attack. That's not a part of this analysis. There's no knowledge, and the Second Circuit has explicitly said that. So you don't need any kind of intent, whatever? No, you need intent to further the terrorist activity of the designated foreign terrorist organization. That you do need, and we have that here. Because the defendants know that ISIS is a designated foreign terrorist organization, and they know that ISIS basically deals with these activities of killing Americans, beheading them, and burning them alive. And by providing substantial assistance to ISIS... In that case, they are providing material assistance through giving them a means of communication and command and control and ability to essentially submit propaganda in the United States and fund-raise in the United States. That is substantial support to ISIS. There's no question about that. But to adjust Judge Nalbandian's question, I think what really narrows the focus, and I see your concern, but what narrows the focus is what the Second Circuit has said, which is essentially that the knowledge component must be satisfied. You must have knowledge that ISIS is going to perform terrorist activities. But you're saying that in Lind they didn't mean that the bank had to have knowledge of the Hamas activities that were actually at issue in the case? They just had to have knowledge that Hamas was conducting terrorist activities. Judge Nalbandian, if you look at the end of Lind, that's exactly what the Second Circuit said. It said as long as they have knowledge of Hamas's activities, they're generally aware of the tortious conduct going on by Hamas. That satisfies the statute. And the Second Circuit, I want to hammer this home, the Second Circuit specifically said this. They do not, the banks do not need to know about the actual attack that killed the plaintiff's decedents. And the same thing applies here. The defendants do not need to know about the Orlando attack. This is where they go off the rails and the district judge also went off the rails. The district judge very, very explicitly went through the reason that your aiding and abetting argument failed. He quotes from this Lind case and he says, aiding and abetting an act of international terrorism requires more than the provision of material support to a designated terrorist organization. Aiding and abetting requires a secondary actor to be aware that by assisting the principal, it is itself assuming a role in terrorist activity. That's exactly correct. That statement of the law is exactly right. It's consistent with what I'm saying. The issue of causation comes into play again in matters of where you assess the causation from. Again, what I opened up with. I believe your time's up and I was not watching. I don't know how long it's been up. Are you at a place you could stop? I believe so. Okay. May it please the court. The defendants in this case had no relationship whatsoever with the, quote, person who committed the attack in this case, as the statute requires. And in any event, providing a general purpose platform for free expression that imperfectly blocks content violating its rules does not establish liability under 2333A, 2333D, or the state law claims. Now, my friend is quite right that there are two different ATA causes of action that are addressed here, under 2333A and aiding and abetting liability enacted by JASTA and codified in 2333D. Taking the latter first, the aiding and abetting claims in this case fail most obviously because there are no allegations in this complaint, much less plausible allegations, that any of the defendants, quote, knowingly provided substantial assistance to the sole, quote, person who committed the shooting, which is Omar Mateen. In terms of what the act of international terrorism is here, the plaintiff's complaint has an entire chapter with its own bold heading proclaiming that the act of international terrorism is the shooting that was committed from the beginning until the end, conceived, executed, and bragged about by Omar Mateen. The plaintiffs have conceded not only that Google, Facebook, and Yahoo had no idea that Omar Mateen walked the face of the earth, but neither did ISIS. They have conceded that ISIS had no knowledge whatsoever that this man even existed, much less that they participate, that they committed the act of international terrorism in this case. Now, in addition, why is it so Lynn doesn't really talk about the individual actors. It only talks about Hamas generally. And there doesn't seem to be any question that if there was a link to Hamas as a group, that there might be liability there for the banks. I'm not saying it's you, but what is Hamas there versus ISIS in this case? I mean, two points on that, Judge Nel Bandian. First of all, in Lynn, the allegation was that Hamas itself, its own soldiers, acting at the direction of the organization, committed the three terrorist acts in question in Israel. There is no such allegation here. Indeed, the allegation in the complaint is that Omar Mateen, a resident of Orlando, Florida, became, quote, self-radicalized by viewing some unspecified content, jihadist content, on unspecified platforms, what it calls the Internet and social media. And therefore, there's what we're into both the substantial assistance of the person who committed the act wrong and also proximate causation under direct liability. There is no link, much less a direct link, between the way that Google, Facebook, and Twitter operate their websites and the attack that actually occurred. And when my friend says there's only one state of mind that matters for aiding and abetting liability, and that is are you generally aware that Hamas is a terrorist organization, that misstates both the holding in Lynn and the plain text of 2333D. Lynn did say, for purposes of some elements of aiding and abetting liability, including whether or not there was substantial assistance to a foreign terrorist organization, that awareness that this is an organization that is a terrorist organization is sufficient, but the opinion then goes on and says there is also the independent requirement that the defendants have knowingly provided substantial assistance to the person who committed the act of international terrorism, which in this case can only be Omar Mateen. So that's the distinction I would draw. I mean, we're at the motion to dismiss stage, right? So why shouldn't we let this go forward and see if he can link ISIS to this Omar Mateen and let a jury decide, well, you know, maybe it was, maybe it is the same thing as Hamas. It's ISIS and this guy. It's a far-flung organization. They bring people into the fold. They took credit for the attack. Let's have some discovery and see. Judge Delbandia, the Supreme Court has made utterly clear in Twombly and in Iqbal that simply making conclusory allegations in a complaint, which is all that exists here, does not satisfy the pleading standards. And individual defendants like these defendants in the multiple lawsuits that have been brought by these lawyers all over the country involving trying to make them liable do not have to go through trial. It is their obligation under Twombly and Iqbal to plausibly state a cause of action. Now let's look at what the plausibility is of, for example, proximate causation in this case. The Supreme Court has said over and over and over again, including most recently last term in the Bank of America case, that at common law proximate causation requires a direct relationship between the person who is alleged to have been involved in the commission of an offense and the injury that suffered. The allegations in this case about what my clients have done, which is conceitedly to operate a platform for free expression available to all who don't violate its rules and to take down and block content and accounts when the clients are aware that there is conduct that violates the rules. The relationship between doing that and the senseless, horrific murders that occurred in the Pulse nightclub, forget some direct liability. Even the complaint itself lists eight separate steps of causation, which I can outline for the court. The Supreme Court in Bank of America has reiterated what it said in Holmes and Anza and Hemigroup, which is for proximate causation purposes, courts should be reluctant to go beyond the first step. This is the eighth step that involves so many countless hypotheticals. The only allegation that my friend keeps saying, the attack that ISIS committed, the attack that ISIS committed, they've conceited ISIS didn't know anything about this man. This man was self-radicalized. He was a lone wolf. And the notion that ISIS thereby committed this attack and that Twitter, Google, and Facebook, by somehow failing to remove some content, and I think here it's worth pausing when we're talking about the particularity of the complaint. There is not an allegation in this complaint about anything that Omar Mateen ever saw before the attack on Twitter or on Facebook, not one. There is one single allegation about something that he saw on Google, which is a fourth hand. Didn't the FBI investigate that? I thought that came from the FBI. What the FBI said is there is no evidence whatsoever, and it's pleaded in their complaint, there's no evidence whatsoever that he had any contact with ISIS in advance or that ISIS knew about him. The FBI said that when they arrested his wife, who was prosecuted and acquitted, they discovered that he had downloaded at least one video from YouTube, which is operated by Google. There's no allegation in the complaint about what that video was and not even a suggestion in the complaint about that it was that one video that self-radicalized this lone wolf terrorist. Do we know if he watched it? No. We don't know anything. We have an unreferenced account from some hearing or some report that somebody said that there was a YouTube video on his account. I mean, this is not a case in which there's any allegation that ISIS committed it,  There is no allegation that ISIS was on the phone with Omar Mateen saying, Look, here's how you do it. I know you're really nervous. It's your first and, by the way, last time, but we'll talk you through it. Go buy the guns and then go buy the ammunition. There's nothing remotely like that in the case. But would there have to be? I mean, what if there were just recruiting videos or training videos that your clients didn't take down? And Omar Mateen saw those and declared his allegiance to ISIS and used that knowledge to go commit this act. Let me give you the answer first. If you're asking about direct liability and aiding and abetting liability, let me give them to you in order. Number one, under direct liability, they have to prove, because they have to prove an injury by reason of an active international terror committed by Google, Facebook, and or Twitter, there has to be proximate causation, which means a, quote, direct relationship between the injury asserted and the injurious conduct alleged. Nothing remotely like that. Number two, in order to establish a violation of 2333A, the activities, quote, of the defendants in this case must, quote, appear to be intended to achieve a terrorism purpose. The operation of a platform for free expression, even an operation that doesn't block, doesn't have rules, and doesn't block and remove content that violates its rules, a general service, general purpose service that's offered to all, no one looks at Google, Yahoo, and Facebook, and thinks that they, quote, appear to be intending to achieve a terrorism purpose. And finally, it is an element, it is a requirement that we have knowingly supplied material support to ISIS. And again, the allegation here. Willful blindness be enough? Willful blindness is, well, yes, willful blindness equates to knowledge, as the Supreme Court has explained. I mean, and your clients know that this stuff is out there, that it's being posted on your platforms, right? Well, not only do we know it, you can look at our, you can look at the public reporting of each of the clients, and you can see that every year the clients are blocking and taking down millions, literally millions of accounts and posts. When they have a platform that attempts to enforce what are very clearly stated rules, which are acknowledged in the complaint, and the question is whether or not this system, in which they have an open platform for free expression for anybody who follows their rules, but are imperfect in being able to take down content when billions of different pieces of content are being posted on their sites, no one would say that they have knowingly, just by doing that generally, that they have knowingly provided substantial assistance to Omar Mateen. I mean, those words make no sense together, and no one would say that by operating this platform for free expression, they have directly caused the death of those poor victims in Orlando. Can I focus on something else? It occurred to me to look back at the complaint, and there is a conclusory statement that Mateen was radicalized by ISIS's use of defendants' tools to conduct terrorist operations. However, that's in paragraph 154. The foundation for that appears to be in paragraph 153, which indicates that the FBI believes that the Orlando shooter Mateen was self-radicalized on the Internet and social media, and the support for that seems to go back to an article in the Los Angeles Times. Is there anything else in the complaint that provides an evidentiary basis for Mr. Mateen ever having viewed any of the material posted on your client's sites? Maybe I'm looking at the wrong version. My paragraph 153 is a description of one of the victims. In that case, it could be that there is an amended complaint and what ended up in my notebook was the original. Okay, so I think if you want to look at the only— I mean, there was a lot of general allegations about the fact that ISIS uses the availability of this platform to raise money and to spread propaganda and that because it does that, you know, there are some people who can see these messages before they're taken down and they become—and there's all these references to some content undescribed on the, quote, Internet and social media. If you want to look at the only allegations in this complaint that address any one of the defendants in this case, on page 54 of the amended complaint, maybe this is what you're referring to. Paragraph 177 says the FBI analysts concluded he was self-radicalized. The next paragraph, 178, says that they found that he watched jihadist sermons online, no specified source, had recently downloaded jihadist material to his laptop. Again, no reference to any of the three defendants in this case. Then 179 says DOJ staff also uncovered that during the arrest of his spouse that Mateen had specifically, quote, utilized ISIS YouTube videos to be recruited and radicalized. Again, no— That sounds like a slightly more detailed— That's the only— Iteration of what I referred to from what is apparently— That's it. That's it with respect to Google. With respect to— I think your time is up. My time is definitely up, but I'm in the habit of keeping the talk until somebody tells me to stop. Well, I gather the point is the same with respect to your other two clients. No, it's stronger. There's no allegation in this complaint that he ever saw anything in advance on Facebook or Twitter, two of the defendants in this case. Thank you. I think two main points need to be addressed as quickly as possible. Number one is if you look at any of the cases on this issue, none of the opinions ever reference the actual attacker or the attacker by name, and that's for very good reason because you don't need to show the connection to the individual attacker. You need to show the connection to the organization. That is— Why isn't Mr. Waxman right that in the Hamas case, there was no question that those were Hamas soldiers that were carrying out— Because in that case, let's look at the procedural context in Lind, there was a full-blown jury trial. There was evidence. The point in the procedural posture of Lind is very critical because here we're at 12B6. We've alleged in the complaint, and I'll reference the actual paragraphs, paragraph 179 that Mateen looked at ISIS videos on YouTube. The apparent source was his wife. The allegation is that DOJ staff uncovered during the arrest of his spouse that he had specifically— I mean, what do we take as true in that paragraph? Well, true, it's a matter of is it a non-conclusory allegation at 12B6? That's the standard. And all of these are non-conclusory. The fact that ISIS claimed responsibility for the attack is a non-conclusory allegation. Where is it that on 12B6, and opposing counsel has yet to highlight this, but where do we have to induce actual evidence of his watching the videos? At this stage of the case, we allege it, and we allege it in a non-conclusory fashion. And under 12B6, all reasonable inferences must be drawn in our favor, not their favor. But how is it reasonable for us to infer that because he viewed videos that he was in fact a member of ISIS in the same way that the Hamas fighters in Lind were members of Hamas? Sure. Again, that case in Lind obviously survived the 12B6 stage. And there in Lind, we're dealing with a jury trial. We have allegations here, non-conclusory, that ISIS claimed responsibility for the attack and Mateen swore his allegiance to ISIS and at 12B6. Do we really want to hold that you need more than that? Is there some type of Google, Facebook, Twitter exception to 12B6? I don't think so. I think these are sufficient and non-conclusory in and of themselves to show that this was an ISIS attack. And to go on the point of focusing on Mateen, if you look at the statutory language itself in 2333D, it talks about substantial assistance to the person who committed the attack. That person could be an individual, and it could also be a society. It could be an association. It could be a corporation. And how do I know that? Because Congress specifically provided that Title I, USC Section 1, governed the term person. And if you cross-reference that with other federal statutes that define the term organization, because we're dealing with a foreign terrorist organization, and I'm referencing 18 USC 2386A, which deals with subversive organizations, if you cross-reference those two sections, the person can be not just a human individual. It could be an association. It could be a society. It could be ISIS. It does not necessarily have to be that you provided the substantial assistance to Mateen. And again, going back to Lind, the Second Circuit said causation, not a problem. Why? Because there was evidence, adduced after a jury trial, though, that this was a Hamas attack. And not that the bank in that case, our bank, had to know about the individual attackers. Lind never says that. No case ever says that because that's not the standard. That's just flat out not the standard. And with respect to causation, I know opposing counsel has referenced fields. We've not touched upon that so much. She references the direct relationship test. No other circuit that has touched this issue has adopted fields, and with good reason, because fields is completely a fish out of water. Thank you. We appreciate the argument that both of you have given, and we'll consider the case carefully. Thank you. Thank you very much.